# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-591

LARRY DAVIE MEAUX, ET AL.

VERSUS

HILCORP ENERGY COMPANY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 99-72994
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and Billy Howard Ezell, Judges.

AFFIRMED.

Donald W. Price
Kirk A. Guidry
Dué, Price, Guidry, Piedrahita & Andrews
8201 Jefferson Highway
Baton Rouge, LA 70809
(225) 929-7481
Counsel for Plaintiffs/Appellants:
    Larry Davie Meaux, et al.

**J. Isaac Funderburk**
**Attorney at Law**
**P. O. Drawer 1030**
**Abbeville, LA 70511-1030**
**(337) 893-8140**
**Counsel for Plaintiffs/Appellants:**
        **Larry Davie Meaux, et al.**

**Kevin R. Rees**
**Attorney at Law**
**P. O. Box 1513**
**Abbeville, LA 70511-1513**
**(337) 893-4669**
**Counsel for Plaintiffs/Appellants:**
        **Larry Davie Meaux, et al.**

**Christopher Hebert**
**Rabalais, Hanna & Hebert**
**701 Robley Drive, Suite 210**
**Lafayette, La 70503**
**(337) 981-0309**
**Counsel for Plaintiffs/Appellants:**
        **Larry Davie Meaux, et al.**

**Charles C. Garrison**
**Caffery, Oubre, Campbell & Garrison, L.L.P.**
**P. O. Drawer 12410**
**New Iberia, LA 70562-2410**
**(337) 364-1816**
**Counsel for Defendant/Appellee:**
        **LLOG Exploration Company, L.L.C.**

**Loulan J. Pitre, Jr.**
**Aimee W. Hebert**
**Christopher B. Bailey**
**Michelle C. Purchner**
**Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P.**
**201 St. Charles Avenue, Suite 4000**
**New Orleans, LA 70170**
**(504) 582-1111**
**Counsel for Defendants/Appellees:**
        **Hilcorp Energy Company, Hilcorp**
        **Energy I L.P., Hilcorp Partners 1992, Ltd.**
        **Tiltex Partners, 97A, Ltd.**
        **Union Oil Company of California**

**Thomas R. Juneau**
**Joshua K. Trahan**
**Juneau Law Firm**
**P.O. Drawer 51268**
**Lafayette, LA 70505-1268**
**(337) 269-0052**
**Counsel for Defendant/Appellee:**
      **Lexington Insurance Company**

**Noel Edward Warren**
**Jackson & Campbell, P.C.**
**300 South Tower**
**One Lafayette Center**
**1120 20th Street, N.W.**
**Washington, D.C 20036**
**(202) 457-1600**
**Counsel for Defendant/Appellee:**
      **Lexington Insurance Company**

**Richard Bryan**
**Jackson & Campbell, P.C.**
**300 South Tower**
**One Lafayette Center**
**1120 20th Street, N.W.**
**Washington, D.C 20036**
**(202) 457-1600**
**Counsel for Defendant/Appellee:**
      **Lexington Insurance Company**

**George H. Robinson**
**Jason P. Bergeron**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70502-2008**
**(337) 232-7424**
**Counsel for Defendant/Appellee:**
      **Forest Oil Corporation**

**DECUIR, Judge.**

In 1944, Davie Meaux, Sr. and his co-owners granted a mineral lease to Union Oil Company of California (Unocal). Some of the lands covered by the lease are now owned by Meaux's grandchildren (Appellants). Shortly after the lease was granted, Unocal began to develop what is known as Tigre Lagoon oil field. This development involved dredging canals necessary to access drilling sites. Unocal placed gaps in the canal banks to ensure the hydrological integrity of Meaux's property. Between 1958 and 1963, someone closed these gaps. The landowners contend that Unocal is responsible. Unocal counters that for many years the landowners hunted and fished these canals without complaint. They built levees to keep out poachers and trespassers and to create a "duck pond." In the duck pond they controlled water levels to create favorable hunting conditions. This active management of the water levels appears to have begun some time prior to 1968. Subsequently, Hurricane Rita damaged the drainage system created by the landowners, flooded a portion of the property known as "Central Impoundment," "Tract A," and the "duck pond," revealing that over time the area had sunk below the level of the surrounding marsh.

In addition, Unocal constructed several unlined pits to hold oil field waste in another area belonging to the landowners. In 1960, Unocal also obtained a Canal Usage Agreement and Salt Water Disposal Agreement. In 1988, Unocal closed the pit in conformity with the Louisiana Department of Natural Resources standards for submerged wetlands as verified by a site inspection conducted by the Department. Due to Unocal's site remediation, the pit area is approximately one foot higher than the surrounding area which is what brought it to the attention of Appellants. Shortly after completing the remediation, Unocal transferred the field to Hilcorp Energy Company.

In 1998, an area of the leased land known as the "fish pond" suffered an unexplained fish kill which Appellants attribute to a nearby pipeline leaking saltwater. Appellants asked Hilcorp to replace the fish and clean up the mess. Hilcorp declined, and this litigation ensued against Hilcorp, and its partners, assigns, and insurer (Forest Oil Corporation, LLOG Exploration Company, LLC., Tiltex Partners, 97A, Ltd., and Lexington Insurance Company). Appellants alleged breach of the Oil, Gas, and Mineral Lease as well as tort claims. Several years later Appellants amended the suit seeking $25,000,000.00 in remediation damages for alleged contamination of the "duck pond" and "pit" areas.

After a trial on the merits, the jury found that there was no environmental damage to Appellants' property attributable to the defendants. The trial judge accepted the jury's verdict and signed a judgment dismissing all of Appellants' claims with prejudice. Appellants lodged this appeal.

### 2006 LA. ACT 312 STANDARD OF REVIEW

Appellants rely on Louisiana Revised Statutes 30:29 C(6)(b), which is part of 2006 La. Act 312, to support their contention that this matter should be reviewed *de novo*. This reliance is misplaced.

La.R.S. 30:29 G provides:

> G. The provisions of this Section are intended to ensure evaluation or remediation of environmental damage. If the court finds that no environmental damage exists, the court may dismiss the department or attorney general from the litigation without prejudice.

Thus, it is clear from the statute that absent a finding of environmental damage, Act 312 does not apply. Act 312 does not address the standard by which the determination of the finder of fact is reviewed. Whether environmental damage exists in a particular case is a question of fact. Questions of fact are reviewed by the

2

appellate court under the manifest error standard of review. *Bellard v. American Cent. Ins. Co.,* 07-1335 (La. 4/18/08), 980 So.2d 654.

The provision cited by Appellants is found in the part of Act 312 addressing the environmental remediation plan developed after a "finder of fact determines that environmental damage exists." La.R.S. 30:29 C(1).

La.R.S. 30:29 C(6) provides in pertinent part:

> (a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

> (b) Any appeal under this Section shall be a de novo review and shall be heard with preference and on an expedited basis.

If the finder of fact finds no environmental damage exists, the Act 312 remediation procedure is not triggered. *See M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So.2d 16. Only judgments under Act 312 are subject to *de novo* review.

Accordingly, the jury's finding that there was no environmental damage must be reviewed under the more deferential manifest error standard.

## ENVIRONMENTAL DAMAGE

The jury in this matter found that no "environmental damage" exists on the property. What constitutes "environmental damage" under Act 312 is a *res nova* issue. Act 312 provides:

> A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage

3

to the environment is remediated to a standard that protects the public interest.

La.R.S. 30:29 I(1).

"Environmental damage" is defined by the Act as:

. . . any actual or potential impact, damage, or injury to environmental media caused by contamination resulting from activities associated with oilfield sites or exploration and production sites. Environmental media shall include but not be limited to soil, surface water, ground water, or sediment.

*Id.*

Accordingly, to fall within Act 312, "environmental damage" must pose some risk to the health, safety, or welfare of the people of the state or be damaging to the public interest.

In this case, the jury found that there was no environmental damage to Appellants' property. Defendants' experts testified that there was nothing unreasonable or excessive about how the pit was used in this case and that the pit area was a submerged wetland. The experts also testified that Unocal's pit closure was reasonable and consistent with the DNR's regulations and the DNR approved the pit closure.

The only evidence submitted by Appellants relating to the fish pond is that there was a fish kill and that there was a nearby pipeline that was leaking salt water. Appellants' own witness testified that there was an earlier fish kill at that same site resulting from natural causes. Appellants' witness further conceded that the pipeline was repaired and has since been removed.

Appellants had no evidence tending to show that the "duck pond" suffered "environmental damage." Appellants presented no evidence that any contaminants threaten the health, safety or welfare of the public. Rather, the focus of their evidence

was on the damage to the marsh caused by the constriction of tidal influx and the impoundment of water which, according to Appellants' experts, allegedly damaged the marsh. The defendants presented an alternative view of the status of the "duck pond," which apparently was accepted by the jury. The defendants offered expert testimony comparing the property with neighboring property with similar drainage but with healthy marsh. The only real factor separating Appellants' property from that of its neighbors was the water control program implemented by Appellants themselves.

In light of the foregoing, we find no manifest error in the jury's determination that there was no environmental damage to Appellants' property.

**INCONSISTENT VERDICT**

By these assignments, Appellants contend the trial court erred in entering judgment based on the jury's allegedly inconsistent verdict and in failing to grant their motion for Judgment Notwithstanding the Verdict or Motion for New Trial.

Reviewing a JNOV on appeal is a two-step process. *Martin v. Heritage Manor S.*, 00-1023 (La. 4/3/01), 784 So.2d 627. First, the appellate court must determine whether the trial court's grant or denial of a JNOV was proper using the same criteria as the trial judge in ruling on the motion. *Id.* A motion for JNOV should only have been granted if the facts and inferences from the case point so strongly and overwhelmingly in favor of the moving party that no reasonable person could arrive at the jury's verdict. *Egle v. Egle*, 06-1550 (La.App. 3 Cir. 6/27/07), 963 So.2d 454, *writ denied*, 07-1596 (La. 10/26/07), 966 So.2d 579. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard. *Martin*, 784

So.2d at 627. The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. *Id.* at 632.

Appellants also contend that there are inconsistencies in the jury verdict requiring that it be set aside and the case reviewed *de novo*. "[A] reviewing court must exercise great restraint before disregarding a jury verdict and turning to de novo review," *Adams v. Rhodia, Inc.*, 07-2110 ( La. 5/21/08), 983 So.2d 798, 805.

The jury verdict form was divided into sections dealing with the various causes of action. The first section dealt with Act 312 issues and the jury clearly found that there was no environmental damage. There is no inconsistency in the jury's verdict with respect to that issue and we have found that there was no manifest error in the jury's determination. Likewise, we find no error or abuse of discretion in the trial court's denial of Appellants' motions for JNOV and New Trial.

The jury form next addresses the contract claims asserted by Appellants. The jury found that no defendant exercised its rights under the "Oil, Gas, and Mineral Lease" in an unreasonable or excessive way causing damage to Appellants' property. Again, there is no inconsistency in the jury's response. We find no error or abuse of discretion in the trial court's denial of Appellants' motions for JNOV and New Trial.

The jury form next addresses the tort claims asserted by Appellants. Here the jury found that the defendants acted negligently but that their negligence was not the legal cause of Appellants' alleged damages. Appellants argue that this is inconsistent with the jury's response to the next sections of the jury form allocating fault and making findings regarding "the amount of money necessary" to bring Appellants' property back to its original condition. We disagree.

In support of their position Appellants cite *Ferrell v. Fireman's Fund Ins. Co.,* 94-1252 (La. 2/20/05), 650 So.2d 742. *Ferrell* is distinguishable.

The *Ferrell* verdict resulted in a situation where a negligent defendant was not assessed any percentage of fault, while another party who was determined to have been negligent, but not a proximate or legal cause of the accident, was apportioned with thirty percent of the fault. This is the inconsistency that interdicted the fact finding process in *Ferrell*.

It is clearly a different issue in this case. Here, the jury concluded repeatedly with respect to Act 312, tort, and contract claims that none of the defendants were the legal cause of any defect in Appellants' property. The jury also concluded that Appellants had knowledge of possible damage to their property at a date that would preclude recovery. The jury then completed the jury form filling in allocations of fault and damages. These sections of the form instructed the jury to complete the section if they had answered yes to "any" of a series of numbered sets of two questions. The jury answered yes to one of the questions in the set of questions on negligence but no to the legal cause question. Thus, the jury was not required to answer the questions on allocation of fault and damages because they found that the defendants were not the legal cause of Appellants' alleged damages. By answering these questions, the jury created no inconsistency with its determination that the defendants were not the legal cause of the alleged damage to the property. It is apparent from reviewing the form that it was confusing and led the jury to complete portions of the form that their other answers did not require. The additional answers were not required, but did not undermine the validity of the judgment. The answer of the jury that the Defendants were not the legal cause of Appellants' damages

required that judgment be entered in favor of the defendants. There is no inconsistency in the jury's answers on the verdict form - La.Code Civ.P art. 1812 (C)(1) recognizes that "fault" may exist even if such fault was not the legal cause of damages. Accordingly, the trial court did not err in entering judgment, or denying the motions for JNOV and New Trial.

As noted by Appellants, this issue is dispositive and our finding renders the remaining assignments of error moot.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are taxed to Appellants.

**AFFIRMED.**