JUDE G. GRAVOIS, Judge.
IgThe plaintiff has appealed the jury verdict in favor of the defendants in this legal malpractice case. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiff, Frank Willis,[1] was rendered a quadriplegic on April 5, 2002 when he fell from the roof of a structure he was working on. At the time of his accident, plaintiff was a subcontractor for Rapid Services. The owner of Rapid Services, Ryan Meilleur, filed a report of this injury with the Office of Workers’ Compensation. Rapid Services’ workers’ compensation insurer, the Louisiana Commerce & Trade Association Self Insurer’s Fund, initially denied payment of any benefits other than medical expenses. Plaintiff contracted with attorney Salvador Brocato of the law firm of Jim Hall and Associates to represent him in his workers’ compensation ease. A mediation hearing was held with the Office of Workers’ Compensation on August 8, 2002. As a result of the mediation hearing, |sit was agreed that the insurer would begin paying plaintiff minimum wage workers’ compensation benefits ($106 per week), retroactive to the date of the accident. In answers to interrogatories, plaintiff stated that during the five years preceding his accident, he earned from $28,000 to $30,000 per year doing roofing work. However, plaintiff was unable to produce any documentation to substantiate these alleged earnings.
On July 7, 2003, a mediation was held between the parties in an effort to settle plaintiffs workers’ compensation claim. The mediation was attended by plaintiff, his son, and his attorneys, Jim Hall and Salvador Brocato, as well as a representative of the insurer, and the insurer’s attorney, Robert Lorio. As a result of the mediation, the parties reached a settlement agreement in which plaintiff would receive a lump-sum payment of $120,000, *1262 plus payment of his attorneys’ fees, payment of medical expenses in the amount of $32,000 per year, payment to plaintiff of $500 per month for life, and a waiver by Rapid Services and its insurer of all subro-gation rights in plaintiffs third-party tort claim. This settlement agreement was approved by the workers’ compensation judge on September 9, 2003. The settlement of plaintiffs workers’ compensation claim was consummated shortly thereafter.
On April 28, 2004, plaintiff filed a disputed claim for compensation with the Office of Workers’ Compensation seeking to set aside the settlement agreement based on misrepresentations. Plaintiff contended that his attorneys misrepresented to him that he would continue receiving 24-hour nursing care and other medical services after the settlement. The workers’ compensation court held a trial on plaintiffs petition on September 8, 2004. On December 28, 2004, the workers’ compensation judge rendered judgment denying plaintiffs motion to set aside the settlement agreement.
|4On December 6, 2004, plaintiff filed suit against his attorneys, Salvador Broca-to and Jim Hall, defendants/appellees in this appeal, alleging that they committed legal malpractice in their representation of him in his workers’ compensation case. Plaintiff alleged that defendants failed to obtain approval of the workers’ compensation settlement by the Social Security Administration and/or Medicare, thereby jeopardizing his future entitlement to Medicare, that defendants failed to obtain the $30,000 lump-sum payment which he was entitled to pursuant to La. R.S. 23:1221(4)(s)(i), that the settlement was inadequate to cover his estimated $160,000 per year costs for medical assistance, and that defendants failed to pursue proof of his prior earnings.
After numerous pretrial motions and hearings, the matter proceeded to trial. At trial, Mr. Brocato testified that the reason why plaintiff originally received only $106 per week in workers’ compensation benefits was because there was no evidence of his prior earnings. Plaintiff had not filed income tax returns in over fifteen years. Mr. Brocato testified that plaintiff wanted to go to mediation because he wanted to settle his case and receive a lump-sum payment so that he could buy a house and a dump truck, explaining that plaintiff complained that he “was starving” on the $106 weekly payments. Mr. Broca-to further explained that he was concerned that the workers’ compensation insurer would file a motion to dismiss the claim due to plaintiffs inability to prove his prior wages. Mr. Brocato explained that because of plaintiffs failure to file tax returns, he did not qualify for Medicare or Social Security benefits. Rather, plaintiff received Supplemental Security Income and Medicaid benefits. Mr. Brocato testified that they contracted with NuQuest in order to determine the effect of the settlement on any Social Security and Medicare benefits plaintiff may have been receiving or was entitled to. NuQuest rendered a report stating that Medicare and Social Security did not [shave to approve the settlement because plaintiff did not meet the then-current review threshold. Mr. Bro-cato testified that he relied on NuQuest’s report in settling plaintiffs case. He explained that NuQuest confirmed that plaintiff could not have more than $2,000 in countable assets in order to receive Medicaid. Because plaintiff intended to purchase a house and/or a dump truck with the settlement funds, these would not be considered countable assets.
Mr. Brocato admitted that a written demand had not been made for the $30,000 lump-sum payment pursuant to La. R.S. *1263 23:1221(4)(s)(i).[2] However, Mr. Brocato stated that this payment was personally discussed with the insurer’s attorney and Mr. Brocato was concerned that if this issue was pushed, the entire settlement could be lost. He explained that he thought it would have been futile to file a written demand for this sum. He concluded that the $30,000 was paid as a result of all the “dispute in this case.” Mr. Brocato explained that plaintiffs workers’ compensation claim was a tough case because there were allegations of fraud due to plaintiffs inability to prove his prior wages. Further, plaintiffs employee, Raymond Ballard, was also injured in this accident. Because plaintiff did not have workers’ compensation insurance for his employee, plaintiff could have been responsible for reimbursing Rapid Service’s compensation insurer for payments it made to or on behalf of Mr. Ballard.
Mr. Brocato acknowledged that he hired Nathan Fentress to do a life-care plan for plaintiff. Mr. Fentress rendered a report stating that it would take | f,$160,000 per year to maintain plaintiffs care. However, this report was based on plaintiff receiving 24-hour care. Mr. Brocato testified that he disagreed with Mr. Fentress’ report because Dr. Katz, plaintiffs choice of treating physician, wrote a report stating that plaintiff only needed seven hours of direct care per day. The compensation insurer also had a report that stated plaintiff did not require 24-hour care. Mr. Brocato testified that prior to the settlement, a company named Private Care was providing care to plaintiff. Some of plaintiffs family members were trained and employed by Private Care; they cared for plaintiff and were compensated by Private Care. After the settlement, Private Care continued paying plaintiffs family members to care for him. Sometime in December 2003, Private Care was notified that the insurer would not pay for care after the date of the settlement, September 2003. Thereafter, Private Care sought to get payment from plaintiff. A Private Care representative, Ms. Fulgenzi, contacted Mr. Brocato about these charges. Mr. Brocato explained that Private Care billed the compensation insurer $25 per hour when plaintiffs family members cared for plaintiff, but the family members were only paid $7 per hour. For this reason, in the mediation it was determined that $32,000 per year was sufficient to cover payment to plaintiffs family members for caring for plaintiff. Additionally, Mr. Brocato testified that at the mediation, plaintiff stated that $32,000 would be enough money to pay his family members directly for caring for him. Mr. Brocato explained that plaintiff wanted complete control over who cared for him and what they were paid. Based on these discus *1264 sions and agreement, the $32,000 per year in medical expenses was put into a fund and managed by MedBill. Plaintiff submitted invoices to MedBill and they sent him the money to pay his family member caretakers.
17Mr. Brocato denied that plaintiff was illiterate. He further testified that plaintiff participated in the mediation and that all aspects of the settlement were explained to him. Mr. Brocato testified that he later went over each paragraph of the settlement documents with plaintiff in his office. This took about 30 minutes. After the settlement checks were received, he brought them out to plaintiff, who was in his van, to sign the checks. Three to five days later, settlement funds in the amount of $99,452.73 were distributed to plaintiff.[3]
Jim Hall testified that he paid all of the costs of plaintiffs workers’ compensation litigation and loaned plaintiff $12,000 during the pendency of his workers’ compensation litigation. Mr. Hall explained that he and Mr. Brocato had discussed obtaining the $30,000 lump-sum for plaintiff so he would not have to loan him money, but the compensation carrier refused to pay this amount. He and Mr. Brocato did not want to pursue this issue because they were concerned that the compensation carrier would discontinue the medical benefits.
Mr. Hall also denied that plaintiff was illiterate or that he did not understand the mediation proceedings or the settlement. He described plaintiff as being “very sharp.” He testified that at the mediation, plaintiff stated that he wanted a lump-sum and complete control over paying his caretakers. He testified that he and Mr. Bro-cato explained to plaintiff that the compensation carrier could seek reimbursement from any money plaintiff received from the third-party tort suit, and that as part of the settlement, the compensation carrier was waiving this right.
Mr. Hall further testified that plaintiff knew that Private Care would not be involved in his care after the settlement and that a fund would be set up from which he could pay his family members directly to care for him. He testified that plaintiff wanted to control this fund. In support of his belief that plaintiff knew | ^Private Care would not be involved in his care after the settlement, Mr. Hall pointed out that plaintiff called Mr. Brocato after the settlement to tell him that Private Care was still providing him care. Mr. Hall further testified that the $32,000 payment for plaintiffs annual care was the amount recommended on the report done for the workers’ compensation insurer.
Mr. Hall also testified that plaintiffs total workers’ compensation settlement was about one million dollars. He felt that this was a very good settlement under all of the particular facts and circumstances involved with plaintiffs case. He felt that because of the fact that plaintiff was unable to produce any records of prior earnings, plaintiff could have easily ended up with nothing, or could have ended up with only $106 per week for life.
Since plaintiff was deceased at the time of trial, his deposition and prior testimony was read to the jury. In this testimony, plaintiff stated that his monthly expenses were about $2,000 per month, which included his cable television, phone, water, utilities, gasoline, and car insurance expenses. He and his live-in girlfriend received $125 per month in food stamps and he received $500 per month from Social *1265 Security. He acknowledged that he wanted to settle his case, but he did not think it would turn out like it did. He wanted a big settlement so he could build a house, buy a van, and get medical care. Plaintiff denied that he urged his attorney to settle his case and that a settlement amount was ever discussed. Plaintiff testified that he had no choice but to settle his case because Mr. Brocato told him that if he did not settle, he may have ended up getting only $106 per week for life. At the mediation, Mr. Brocato told him that he would get $100,000 if he settled, and if he did not take this, he may get nothing. Plaintiff testified that Mr. Brocato told him that Mr. Ballard (plaintiffs employee) said that he and plaintiff had put up the boards that plaintiff stepped on when he fell. Plaintiff testified that he was |fltold that he would be able to keep his “medical help” after he settled, but “it went the other way.” Plaintiff testified that he understood that he would receive $32,000 per year to do whatever he wanted to. He explained that his family was being paid $6.50-$7.00 per hour to care for him, but they wanted a raise. He did not buy a house with his settlement funds, but he did buy a van and a dump truck. He had a driver for the dump truck and on a good week was able to earn $300-$400. Plaintiff testified that he paid his girlfriend and his son $1,000 each per month to care for him. In addition, he paid a nurse $600 per month. Plaintiff testified that the doctor stated that he needed 24-hour care for the rest of his life. Plaintiff testified that he would not have settled his workers’ compensation case if he had known that his medical and nursing care would not be paid.
Plaintiff acknowledged signing the settlement documents, but denied that these documents were explained to him. He testified that he is unable to read; he merely signed where his attorney told him to sign.
Plaintiff testified that he never informed Social Security about his settlement, but when they found out about it, his monthly Social Security benefit of $552 per month was decreased to $507 per month.
Plaintiff testified that his attorney told him that he had to prove how much he was earning at the time of the accident, but he had no records to prove how much money he earned. He told his attorney to get records from the contractors he worked for, but his attorney failed to do so. He stated that he had last filed income tax returns fifteen or twenty years previously.
Robert Lorio, the attorney for the workers’ compensation insurer, testified that plaintiffs attorneys were making demands for payment, but there were issues as to whether compensation was actually owed. Mr. Lorio explained that his client was the workers’ compensation carrier for Rapid Services. Rapid Services was the | ^general contractor on a project and they subcontracted a portion of the work to plaintiff and his employee to perform. Mr. Lorio explained that there were several defenses to plaintiffs compensation claim.
Under Louisiana law, if a subcontractor does not have workers’ compensation insurance, then the general contractor’s workers’ compensation insurance will cover the subcontractor’s employees. In this instance, plaintiff was not an employee; rather, he was the owner of the subcontracting roofing company. Mr. Lorio testified that plaintiffs employee, Mr. Ballard, was also injured in the same accident. His client had paid compensation benefits to Mr. Ballard and as a result they could have sought indemnity from plaintiff, since plaintiff was Mr. Ballard’s employer. Mr. Lorio further testified that plaintiff made claims regarding his prior income in an effort to increase his compensation benefits. Because plaintiff was unable to prove *1266 his prior earnings, it could have been determined that he violated the fraud portion of the workers’ compensation statute, and as a result, would not have been entitled to benefits. Mr. Lorio explained that he sent requests to plaintiffs prior employers and found there were no records and that plaintiff had not filed income tax returns in over twenty years. Mr. Lorio testified that at the mediation, he made it clear that if plaintiff was unwilling to settle the case, he would go forward with these defenses. Documents prepared by Mr. Lorio in the workers’ compensation suit asserting the defenses were admitted into evidence.
Mr. Lorio testified that plaintiffs attorneys made a number of demands in this case and he made it clear that if the $30,000 was “brought up,” his client would not pay it. He explained that at the mediation, his client had three choices: (1) to not settle and continue to pay plaintiffs care; (2) allow plaintiffs family to take over the care and provide a fund for plaintiffs care for life; or (3) deny liability to plaintiff and pursue the defenses. He explained that because the [^defenses were not a “home run,” his client agreed to settle for the “middle ground,” because had they not been successful at trial, his client could have ended up paying more. Despite these defenses, Mr. Lorio explained that his client paid for plaintiffs medical care because that was the humane thing to do until the claim was fully investigated.
Mr. Lorio testified that the settlement had no impact on plaintiffs Social Security or Medicaid benefits. NuQuest was hired after the mediation to determine whether Social Security or Medicare would have to approve the settlement; however, Nu-Quest determined that such approval was not needed.
Mr. Lorio testified that the life-care plan he had performed for plaintiff indicated that plaintiff would need $470,000 in future medical care for his entire life, which was $32,000 per year.
Voluminous documents were admitted into evidence. These include a letter from NuQuest explaining that plaintiff is not eligible for Social Security or Medicare benefits because he had not “earned enough quarters.” Rather, plaintiff was receiving Supplemental Security Income and Medicaid benefits. This letter stated that based on these findings, plaintiffs case did not meet the current review threshold and approval was not necessary. Answers to interrogatories dated November 17, 2005 in which plaintiff states that he is receiving “SSI” payments of $570 per month were also admitted into evidence.
At the conclusion of the three-day trial, the jury ruled in favor of Mr. Brocato and Mr. Hall and against plaintiff, dismissing plaintiffs claims. On November 22, 2010, the trial court heard and denied plaintiffs motions for new trial and judgment notwithstanding the verdict. This appeal followed.

119ANALYSIS OF ASSIGNMENTS OF ERROR

On January 12, 2011, plaintiff filed a motion for appeal, seeking to appeal the May 5, 2009 judgment granting defendant’s motion in limine, the September 2, 2010 jury verdict, and the November 22, 2010 judgment denying plaintiffs motion for a new trial and judgment notwithstanding the verdict.
With regard to the May 5, 2009 judgment granting defendant’s motion in li-mine, that judgment was an interlocutory judgment and not subject to this Court’s appellate jurisdiction. Plaintiff sought review of that judgment by filing a supervisory writ. This Court denied relief, finding that the trial court had not abused its discretion in ruling on this evidentiary *1267 matter. Willis v. Meilleur d/b/a/ Rapid Services, 09-360 (La.App. 5 Cir. 5/27/09) (unpublished writ disposition), writ denied, 09-1381 (La.10/16/09), 19 So.3d 477. However, plaintiffs arguments relative to the ruling on this motion and the effect it had on his trial were preserved for appellate review and are discussed infra in his assignments of error.
Plaintiff also appealed the November 22, 2010 judgment denying his motion for a new trial and judgment notwithstanding the verdict. The denial of a motion for new trial is not an appealable judgment. Shultz v. Shultz, 02-2534, p. 3 (La.App. 1st Cir. 11/7/03), 867 So.2d 745, 746. Nevertheless, the denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in this case. Moran v. G & G Construction, 03-2447, p. 11 n. 4 (La.App. 1 Cir. 10/29/04), 897 So.2d 75, 83 n. 4, writ denied, 04-2901 (La.2/25/05), 894 So.2d 1148.[4] However, the record before us on appeal, which was designated by the parties, does not contain the transcript of the hearing on the | ^motions for a new trial and judgment notwithstanding the verdict. Further in his brief, plaintiff argues the merits of the appeal rather than the reasons why the trial court erred in denying his motions for a new trial and judgment notwithstanding the verdict. Accordingly, we will address the assignments of error raised in plaintiffs brief.

Assignments of eiror regarding jury charges and evidence of the rescission hearing.

Plaintiffs first four assignments of error relate to jury charges and testimony regarding the hearing and judgment rendered as a result of plaintiffs attempt to rescind his settlement in the workers’ compensation court.
First, plaintiff argues that the trial court erred in entering the following statement of fact in the jury charge:
That workers’ compensation court ruled that there was no evidence of misrepresentation by the parties, no evidence of fraud or ill practices by counsel, nor a conspiracy between counsel and that judgment testified to (sic) a final judgment.
Plaintiff contends that the trial judge was prohibited from charging the jury on the facts because there was no stipulation regarding this charge. He contends that the trial court further erred and confused the jury by going on to state:
However workers’ compensation — the workers’ compensation court does not have jurisdiction over legal malpractice claims such as has been alleged in this case. These allegations as they relate to legal malpractice are reserved for disposition by this Court and are presented to you the jury to decide on the merits.
He argues that the trial court erred by informing the jury on the judgment of the workers’ compensation court when that judgment was not received into evidence. Plaintiff contends that the trial court erred in mentioning the rescission hearing judgment to the jury because it was irrelevant and was unduly prejudicial. He | Ufurther argues that this violated this Court’s ruling regarding the rescission hearing judgment.
The record indicates that plaintiff filed Writ No 09-C-196 seeking review of the trial court’s ruling denying his motion in limine to exclude evidence of the judgment denying plaintiffs motion to rescind *1268 the workers’ compensation settlement. In his writ application, plaintiff argued that this judgment would unfairly taint the jury’s deliberative process and usurp the jury’s role in determining whether legal malpractice occurred in this case. The workers’ compensation court judgment found plaintiffs testimony at the rescission hearing not credible. In its writ disposition, this Court held that the workers’ compensation judge was not an expert on the weight that should be given to plaintiffs testimony. The disposition further stated that this credibility determination “would invite the jury to abdicate its fact-finding role relying instead upon the questionable premise that the expert is in a better position to make such a judgment.” The disposition concluded that the prejudicial impact of this judgment would outweigh its probative value.
At the trial of this matter, reference to the rescission judgment was made several times. The trial judge stated that in light of this Court’s writ disposition, the rescission judgment would not be admitted into evidence. It is apparent from the record that the trial judge and defendant interpreted this Court’s writ disposition to mean that the judgment itself was not admissible, but reference to that proceeding could be made. Indeed, the record indicates that plaintiff introduced the testimony given by plaintiff at the rescission hearing into evidence at the trial in this matter.
In Adams v. Rhodia, Inc., 07-2110 (La.5/21/08), 983 So.2d 798, the Supreme Court stated:
^Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error.
Correlative to the judge’s duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law. Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge.
However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in *1269 its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.
Id. at 804 (internal citations omitted).
We find no error in the jury instructions regarding the rescission judgment and the role of the workers’ compensation judge and the jury in this legal malpractice case. Further, a review of the testimony indicates that the jury was aware that plaintiff had tried to rescind the workers’ compensation settlement. Mr. Lorio testified that he filed an answer and represented his client when plaintiff sought to rescind the settlement. Mr. Lorio explained that plaintiff was seeking to rescind his settlement in the workers’ compensation court alleging that there were misrepresentations by his attorneys. Mr. Lorio testified that there was a trial on lathis attempt to rescind and the workers’ compensation court denied it. He further testified that plaintiff filed an appeal from that judgment, but later dismissed the appeal.
Thus, looking at the testimony and record as a whole, we see no error in the complained of jury charges informing the jury that the workers’ compensation court ruled that there was no misrepresentation, fraud or ill practice. The trial court then reminded the jury that the workers’ compensation court did not have jurisdiction to decide the merits of this legal malpractice claim; rather this claim was for the jury to decide. Thus, we find that this jury instruction did not mislead the jury to the extent that it was prevented from dispensing justice. Accordingly, plaintiffs assignments of error related to the jury charges referencing the rescission judgment are without merit.
Plaintiff also argues that the trial court erred in allowing testimony regarding the rescission hearing and further that this testimony violated this Court’s writ disposition in Writ No. 09-C-196. Plaintiff does not cite to any specific testimony in his brief. Rather, he concludes that permitting testimony regarding the rescission hearing was reversible error.
Rule 2-12.4 of the Uniform Rules for the Courts of Appeal states:
The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable references to the record is not made.
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
Thus, we are unable to rule on this assignment of error since plaintiff does not point out exactly what testimony he is referring to.
l17We could infer, however, that plaintiff is referring to the testimony of Mr. Lorio regarding plaintiffs attempt to rescind his settlement in the workers’ compensation court. The erroneous introduction of evidence is subject to a harmless error analysis.
The effect of an erroneous eviden-tiary ruling is that “[ejrror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.” La. C.E. art. 103. The notion of “substantial right” as used in Article 103 is analogous to the harmless error principle applicable in both civil and criminal matters. Richardson v. Richardson, 07-0430 (La.App. 4 Cir. 12/28/07), 974 So.2d 761, 771-72.
*1270 In this case, the jury was presented with evidence that there were many defenses to plaintiff’s claim for workers’ compensation, including that plaintiff may not have been covered by workers’ compensation insurance and that there was no proof of plaintiffs prior earnings. The jury also heard testimony that the defendants worked to secure a settlement in which plaintiff obtained a lump-sum and was able to purchase a dump truck and, through the use of this truck, was able to earn money. The witnesses explained the process of mediation and how this particular settlement was reached. The testimony indicated that plaintiff actively participated in the mediation process. Thus, even if we were to find that testimony regarding the rescission hearing was wrongly admitted, given the overwhelming testimony regarding the defenses to plaintiffs compensation claim and his participation in the mediation and the settlement, we find that the admission of this testimony had little effect, if any, on plaintiffs substantial rights and therefore was harmless.

11SAssignments of error regarding the exclusion of plaintiff’s expert

The defendants prevailed on a motion in limine excluding the testimony of plaintiffs standard of care expert, Charles Davoli.[5] Plaintiff argues that the trial court erred in excluding this testimony and further argues that the trial court erred in refusing to give his requested jury charge that he did not have a standard of care expert because the trial court ruled no such expert was necessary. Plaintiff argues that while his expert was excluded, the defendants presented the testimony of Mr. Brocato, Mr. Hall and Mr. Lorio, who were de facto experts in that they explained how workers’ compensation cases are handled and that the defendants had done a “great job.”
In order to prevail on a legal malpractice claim, the plaintiff bears the burden of proving: (i) an attorney-client relationship; (ii) the attorney was negligent in his representation of the client; and (iii) that negligence caused the plaintiff loss. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129, 138. Failure to prove one of these elements is fatal to the claim. Id.
Clearly there was an attorney-client relationship between plaintiff and the defendants in this matter. Plaintiff then had to prove that the defendants were negligent in their handling of his workers’ compensation case. In his petition, plaintiff alleged that the defendants were negligent in the handling of his compensation claim in that: (1) defendants failed to obtain approval of the workers’ compensation settlement by the Social Security Administration and/or Medicare, thereby jeopardizing his future entitlement to Medicare; (2) defendants failed to obtain the $30,000 lump-sum payment to which he was entitled pursuant |19to R.S. 23:1221(4)(s)(i); (3) the settlement was inadequate to cover his estimated $160,000 per year costs for medical assistance; and (4) defendants failed to pursue proof of his prior earnings.
We find again that this alleged eviden-tiary ruling is subject to a harmless error analysis. Plaintiff proffered the deposition of his proposed expert, Mr. Davoli, an attorney with many years’ experience in representing clients in workers’ compensa *1271 tion claims. In Ms deposition, Mr. Davoli testified that there was no due diligence in not creating a special needs trust in order to preserve plaintiffs continued Supplemental Security Income eligibility and Medicaid eligibility. He also noted that the custodial medical trust that was set up for plaintiff provided for $32,000 annually, when the life-care plan done by plaintiffs attorney had information that plaintiffs annual medical expenses were $160,000, making the amount of the settlement inadequate. Mr. Davoli testified that there was no evidence that plaintiffs attorneys made a specific demand for the $30,000 benefit available to quadriplegics.
With regard to the failure to obtain approval, there is a report by NuQuest that was introduced by plaintiff which clearly states that plaintiff was not eligible for Social Security or Medicare benefits, and that this settlement did not have to be approved by Social Security and Medicare. Further, plaintiff testified that he was receiving income from Social Security.
With regard to failure to obtain the $30,000 lump-sum payment, there was testimony from Mr. Broeato and Mr. Lorio that this amount was included in the lump-sum payment plaintiff received. Further, Mr. Hall testified that he had inquired as to this benefit because had they been able to obtain it, he would not have had to make a loan to plaintiff during the pendency of the workers’ 12nCompensation proceeding. Moreover, Mr. Lorio testified that had this payment been demanded, his client would have refused to pay it.
With regard to the inadequacy of the amount of payments for medical assistance, there was evidence that plaintiffs treating physician stated that plaintiff did not need 24-hour care. There was also evidence that plaintiff stated at the mediation that the $32,000 annual amount obtained in the settlement was sufficient to pay his family members to care for him. Further, Mr. Lorio testified that he had a life-care plan performed for plaintiff and this report concluded that the $32,000 annual amount was sufficient to pay for plaintiffs medical assistance.
With regard to defendants’ alleged failure to pursue proof of plaintiffs prior earnings, there was evidence presented by plaintiff and defendant that no proof of prior earnings existed. Mr. Lorio testified that he tried to obtain records from plaintiffs alleged prior employee and/or contractors and there were no records.
There is no doubt that plaintiff suffered grave injuries when he fell off of the roof. However, the workers’ compensation defendants were aware of and were willing to pursue possible defenses to plaintiffs workers’ compensation claim. These defenses impacted the amount plaintiff .could receive in compensation for his injury. A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. Id.
Thus, our review of the record as a whole indicates that any alleged error in excluding the testimony of plaintiffs expert was harmless because there was evidence before the jury that the defendants were not negligent in failing to obtain a settlement that covered plaintiffs need for medical assistance and for failing to structure the settlement in a way to protect plaintiffs eligibility for Social Security and Medicare benefits. Plaintiff himself produced evidence that he was not eligible for Social Security and Medicare benefits and that he continued to receive 12iSupplemental Security Income from Social Security after the settlement. Further, plaintiff presented the testimony of a Private Care representative stating the type and cost of care plaintiff received *1272 before the settlement and that the settlement was insufficient to cover the cost of this care. Plaintiff also presented evidence of his life-care plan stating that the cost of his medical assistance care is $160,000 per year and that the $32,000 per year provided for in the settlement was inadequate.
Likewise, we find no error in the trial court’s omission of plaintiffs proposed jury instruction regarding plaintiffs lack of expert testimony on the standard of care. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. Simmons v. Schumpert Med. Ctr., 45,908 (La.App. 2 Cir. 6/15/11), 71 So.3d 407, 425, writ denied, 11-1592 (La.10/7/11), 71 So.3d 317. The adequacy of the jury instructions that were given must be determined in light of the instructions as a whole. Segura v. State Farm Ins. Co., 94-1428, (La.App. 3 Cir. 5/31/95), 657 So.2d 1047,1050.
The record reveals that the trial judge instructed the jury that plaintiff had to prove that he was damaged, that the defendants were negligent and that defendants’ negligence caused his damage. The judge explained that this evidence had to be proved by a preponderance of the evidence and that the testimony had to show what was sought to be proved was more likely true than not true. The judge instructed the jury that if a lawyer fails to exercise that degree of care, skill and diligence commonly exercised by practicing attorneys, he is liable to his client for damages resulting by that failure. The judge went on to state that the lawyer’s profession requires the exercise of judgment and he is not at fault if his judgment proves in hindsight to have been wrong. Rather, the lawyer is only at fault if he did not use the degree of skill commonly used by practicing lawyers in this type of 122case. Thus, we find that the charges as a whole adequately provide the correct principles of law as applied to the allegations framed in the pleadings and the evidence and that these charges sufficiently guided the jury in its deliberation. Given the evidence that was presented and the jury instructions taken as a whole, we do not find that the omission of plaintiffs requested jury instruction misled the jury to the extent that it was prevented from dispensing justice.

Assignment of error regarding the trial court’s refusal to grant a judgment notwithstanding the verdict in the amount of $30,000

In this assignment of error, plaintiff argues that he is entitled to a judgment notwithstanding the verdict on the claim for $30,000 plaintiff was due under La. R.S. 23:1221(4)(s). Plaintiff contends that no reasonable jury could conclude that defendant’s actions met the standard of care in failing to demand this money.
A motion for judgment notwithstanding the verdict should only be granted if the facts and inferences from the case point so strongly and overwhelmingly in favor of the moving party that no reasonable person could arrive at the jury’s verdict. Meaux v. Hilcorp Energy Co., 09-591 (La.App. 3 Cir. 12/9/09), 26 So.3d 875, 880, writ denied, 2010-0441 La. 4/30/10, 34 So.3d 294.
Our review of the entire record and testimony in this case indicates that the record supports the jury’s finding that defendants were not negligent and did not commit legal malpractice in their representation of plaintiff in his workers’ compensation claim. Specifically with regard to the $30,000 benefit, while it is clear that a written demand was not made for this sum, the testimony indicates that Mr. Bro- *1273 cato discussed this benefit with Mr. Lorio. Mr. Lorio testified explicitly that had plaintiffs attorneys demanded this payment, his client would not have paid it because of the numerous defenses to plaintiffs claim, ie., no proof of prior | ^earnings, plaintiff was owner of subcontracting entity and did not have his own compensation coverage, and plaintiff and his employee may have been at fault for causing this accident. Further, Mr. Bro-cato’s testimony indicated that the $30,000 was included in the lump-sum payment plaintiff received in the settlement. Thus, since the record contains a reasonable factual basis for the jury’s determination, plaintiff was not entitled to judgment notwithstanding the verdict.

CONCLUSION

For the foregoing reasons, the judgment of the trial court dismissing plaintiffs suit is hereby affirmed.

AFFIRMED

. Mr. Willis passed away during this course of this proceeding. His heirs were substituted as parties-plaintiffs. However, Mr. Willis will be referred to as plaintiff in this opinion.

. La. R.S. 23:1221 (4)(s) provides, in pertinent part:
(s)(i) In addition to any other benefits to which an injured employee may be entitled under this Chapter, any employee suffering an injury as a result of an accident arising out of and in the course and scope of his employment shall be entitled to a sum of thirty thousand dollars, payable within one year after the date of the injury.
[[Image here]]
(iii) Only the following injuries shall be considered injuries for which benefits pursuant to this Subparagraph may be claimed:
(aa) Paraplegia or quadriplegia or the total anatomical loss of both hands, or both arms, or both feet, or both legs, or both eyes, or one hand and one foot, or any of two thereof; however, functional loss or loss of use shall not constitute anatomical loss.

. The record reflects that this was the net amount due plaintiff after deducting loans made to plaintiff by Mr. Hall during the course of representation of plaintiff and other expenses.

. See also Noto v. Noto, 09-1100 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1178-79, wherein the Louisiana Supreme Court has instructed the courts of appeal to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits, when it is clear from appellant’s brief that he intended to appeal the merits of the case.

. When an appellate court denies a writ of review, declining to exercise its power of supervisory jurisdiction, reconsideration of this issue is not barred in an appeal from the final judgment in that case. Goodwin v. Goodwin, 607 So.2d 8 (La.App. 2d Cir.1992). Thus, plaintiff correctly argues that this Court's ruling in Writ No. 09-C-360 finding that the trial court did not abuse its discretion in excluding Mr. Davoli’s testimony does not prohibit the review of this issue on appeal.