MARION F. EDWARDS, Judge.
 

 | gPIaintiff/appellant, Rachel Hartz, appeals a summary judgment in favor of defendani/appellant, Dr. Anthony Indovi-na, D.D.S., dismissing her malpractice claims against him. For the following reasons, we amend the judgment in part and affirm in part.
 

 In 2003, Mrs. Hartz had been experiencing migraine headaches when her jaw “popped.” She consulted a dentist, who referred her to an orthodontist. Mrs. Hartz, who lived in California at the time, was told she would eventually need surgery called a three-piece Le Fort I osteo-tomy, to expand her upper pallet. Meanwhile, she had a splint for several months to relax her jaw, then bracket therapy to put braces on and move the teeth where they were supposed to be for surgery. The splints helped her migraines, which were eventually reduced about 75 percent. Arrangements were made with an oral surgeon, Dr. Ray Smith, and Mrs. Hartz was ready for surgery when her husband was deployed to Kuwait.
 

 Mrs. Hartz moved home to Jefferson Parish in Louisiana. Her California physician referred her to Dr. Jack Devereaux as her orthodontist. Dr. Devereaux | (¡agreed that Mrs. Hartz could have the Le Fort I procedure, although he preferred to finish the job with the wires and splint. Mrs. Hartz wanted the surgery.
 

 Dr. Indovina performed the surgery, after which Mrs. Hartz developed problems. In her petition, she alleged that improper surgical technique resulted in avascular necrosis that, in turn, resulted in major bone loss as well as the loss of several teeth. Mrs. Hartz developed necrosis in the surgical area but alleged that Dr. In-
 
 *255
 
 dovina did not detect it in his follow-up examination. Further surgery was required. Mrs. Hartz additionally alleged that Dr. Indovina failed to properly follow up after surgery or to make appropriate medical referrals, and she did not receive proper medical consent.
 

 A Medical Review Panel was convened, following which the panel concluded that no evidence indicated that Dr. Indovina failed to meet the applicable standard of care. The panel determined that the informed consent was appropriate and that the description of the surgery demonstrated proper treatment carried out in an appropriate amount of time. The panel further determined that the early post-operative course was without evidence of complications, and the necrosis was diagnosed and treated in a timely manner.
 

 Following discovery, Dr. Indovina moved for summary judgment, urging that Mrs. Hartz had failed to produce any medical expert or other credible evidence in support of her claim.
 

 During the course of discovery, Mrs. Hartz retained an expert in the field of oral and maxillofacial surgery, Dr. Alex V. Meneshian. Dr. Meneshian practices in New York and his deposition was placed into the record. Dr. Meneshian reviewed the depositions of Dr. Indovina, Dr. Dever-eaux, and Mrs. Hartz, and also reviewed the hospital charts. It appeared that the surgery was an attempt to correct a |4posterior cross bite to a normal bite so as to relieve headaches, migraines, and TMJ (Temporomandibular Joint) Symptoms.
 

 There are two possible recognized procedures to correct this problem. One is the Le Fort osteotomy performed here, the other is “SARPE,” or “surgery assisted rapid palatal expansion,” a less invasive procedure. Both procedures are within the standard of care for Mrs. Hartz’s condition. The risk of blood supply compromise is significantly higher in the osteoto-my, but Dr. Meneshian could not give any specific research that has documented such risk. The osteotomy can be performed using the appropriate standard of care and still result in necrosis. Dr. Meneshian has performed this type of surgery, as well as palatal expansions. The latter procedure also has risks, although the risk of bone necrosis is almost zero.
 

 Dr. Meneshian agreed that the consent form in this case was accurate and listed the potential complications. In his opinion, the exact cause of the compromise of the blood supply is hard to determine; that is, to say whether it was a direct injury at the time of the procedure or something that occurred later. Slow vessel necrosis occurs when there is injury to the vessels intra-operatively. Dr. Menes-hian could not say how it happened. He agreed that, because he did not know the cause of the compromise to the blood supply, there could have been surgical or nonsurgical reasons unrelated to and actions of Dr. Indovina.
 

 Dr. Meneshian thought it more likely than not that some signs of necrosis were present at the time of the first post-operative visit. However, Dr. Indovina, who examined her, was in the best position to know this. If there is a direct injury from surgery, some evidence is present in the first 24 to 48 hours. If the necrosis showed up nine days post surgery, it is unlikely to have been a direct result of the procedure. Dr. Indovina’s follow-up was appropriate, and Dr. Meneshian did not opine that Dr. Indovina deviated from the accepted standard of care.
 

 | RPr. Meneshian also issued a report, stating there were two main reasons “for deviation of standard of care.” First, the Le Fort procedure has “significant [sic] more risk such as avascular necrosis” than
 
 *256
 
 the SARPE and was “not ideal.” Second, it “is hard to imagine” there was no sign of vascular compromise in the first post-operative visit. Three days after that initial visit, the entire right maxilla appeared to be necrotic.
 

 Summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summaiy judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.
 
 [1]
 
 La. C.C.P. art. 966(C)(2) places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case.
 
 [2]
 
 If a defendant moving for summary judgment has made a prima fa-cie showing that the motion should be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain.
 
 [3]
 
 Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and movant is entitled to summary judgment.
 
 [4]
 
 The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 [5]
 

 | (¡The plaintiff bears the burden of proving that a doctor committed malpractice.
 
 [6]
 
 Any medical malpractice claimant must establish, by a preponderance of the evidence: (1) the defendant’s standard of care, (2) the defendant’s breach of that standard of care, and (3) a causal connection between the breach and the claimant’s injuries.
 
 [7]
 

 Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
 
 [8]
 
 The certified copy of the opinion of the medical review panel can be additional evidence which the district court could consider in determining the appropriateness of summary judgment.
 
 [9]
 

 In the present case, although Dr. Indo-vina did not bear the burden of proof, the opinion of the medical review panel opinion serves as evidence of expert medical testimony that Dr. Indovina had not failed to act within the appropriate standard of care and, thus, this was evidence which tended to negate Mrs. Hartz’s claims. The report and testimony of Dr. Meneshian do not negate or challenge that issue of material fact, i.e., that Dr. Indovina deviated from the appropriate standard of care. Al
 
 *257
 
 though his initial report indicates Dr. Meneshian found a deviation, the subsequent deposition demonstrates otherwise. He determined that, while the procedure performed was not ideal, he agreed it was within the standard of care for Mrs. Hartz’s condition. There was no evidence of a direct injury resulting from the surgery. The risk of necrosis was a known risk. As we understand the testimony, Dr. Meneshian opined that it was likely that some signs of necrosis would have |7been present at the first post-operative visit if it were a result of the surgery. Nevertheless, Dr. Meneshian agreed that Dr. Indo-vina’s follow up was appropriate.
 

 In summary, Mrs. Hartz submitted no evidence at the summary judgment proceedings, expert or otherwise, to support her allegations of a deviation from the appropriate standard of care. Without sufficient evidence to establish that she will be able to prove the claim at trial, no genuine issue of material fact exists. Thus, the district court properly granted summary judgment in favor of Dr. Indovi-na.
 

 Dr. Indovina answered the appeal, urging that, because he was the prevailing party, the trial court improperly assessed his proportionate share of court costs to him. A trial court is given great discretion in taxing court costs in any manner it deems equitable.
 
 See,
 
 La. C.C.P. art. 1920. Although it is a general rule that the party cast in judgment is taxed with costs of the proceedings, the trial court may assess costs in any equitable manner and its assessment will not be reversed on appeal in the absence of an abuse of discretion.
 
 [10]
 
 However, generally, the prevailing party is not assessed with costs, unless in some way he incurred additional costs pointlessly or engaged in other conduct, which justified an assessment of costs against him.
 
 [11]
 
 Here, there is no indication that Dr. Indovina, the prevailing party, incurred additional costs pointlessly or engaged in other conduct, which justified an assessment of costs against him. Therefore, the trial court erred in failing to assess all costs of the proceedings to Mrs. Hartz.
 

 For the foregoing reasons, the judgment is amended to reflect that all costs are assessed to Mrs. Hartz. In all other respects, the judgment is affirmed.
 

 AMENDED IN PART; AFFIRMED IN PAR T.
 

 [1]
 

 .
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730.
 

 [2]
 

 .
 
 Babin v. Winn-Dixie Louisiana, Inc.,
 
 00-0078 (La.6/30/00), 764 So.2d 37.
 

 [3]
 

 .
 
 Fossier v. Jefferson Parish,
 
 07-926 (La.App. 5 Cir. 4/15/08), 985 So.2d 255.
 

 [4]
 

 .
 
 Samaha v. Rau,
 
 07-1726 (La.2/26/08), 977 So.2d 880.
 

 [5]
 

 .
 
 Babin v. Winn-Dixie, supra.
 

 [6]
 

 .
 
 Perricone v. East Jefferson Gen. Hosp.,
 
 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48;
 
 Seagers v. Pailet,
 
 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700.
 

 [7]
 

 .
 
 Fricke v. Ochsner Found. Hosp.,
 
 05-868 (La. App. 5 Cir. 4/11/06), 927 So.2d 1218,
 
 writ denied,
 
 06-1582 (La.10/6/06), 938 So.2d 75.
 

 [8]
 

 .
 
 Samaha v. Rau, supra.
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 See, Rubenstein v. City of New Orleans,
 
 07-1211 (La.App. 4 Cir. 4/30/08), 982 So.2d 964;
 
 State, Dep't of Transp. and Dev. v. Restructure Partners, L.L.C.,
 
 07-1745 (La.App. 1 Cir. 3/26/08), 985 So.2d 212.
 

 [11]
 

 .
 
 Law Offices of Robert M. Becnel v. Ancale,
 
 02-285 (La.App. 5 Cir. 9/30/02), 829 So.2d 573.